## J. D. CARTER v. D. F. KING.

(Filed 14 November, 1917.)

**1. Appeal and Error—Jurors—Challenges—Objections and Exceptions.**

Where the court has refused to stand aside a juror challenged for cause, and the party has then peremptorily challenged him, in order to get the benefit of his exception he must exhaust his remaining peremptory challenges, and then challenge another juror peremptorily to show his dissatisfaction with the jury, and except to the refusal of the court to allow it.

**2. Same—Court's Discretion.**

Where a juror is challenged for relationship to the adverse party to the action, and erroneously and in good faith says he is not within the prohibited relationship, and is accepted without further challenge, and thereafter only the peremptory challenges are exhausted, it is within the sound discretion of the trial judge to set the verdict aside, before judgment, on the ground of relationship, which is not reviewable on appeal.

**3. Libel—Slander—Jurors.**

Words, oral or written, which tend to impeach the honesty and integrity of a jury in determining their verdict are actionable; and where a party at interest in a controversy wherein the jury disagreed, one to eleven, publicly stated that there was one man on the jury who was not bribed, and in a letter to the attorney of the adverse party stated, "I note what you say about the jury standing eleven to one, this was due entirely to whiskey, and the appeal made to their prejudice": *Held,* the spoken and written words were actionable, *per se,* and the evidence thereof carried the case to the jury.

**4. Same—Damages—Mitigation—Evidence.**

Where libelous words are published of the plaintiff as one of eleven jurors in a former action, it is incompetent to show, in mitigation of damages, that the plaintiff knew that the answer contained a disavowal of any personal reference to him.

CIVIL ACTION, tried before *Harding, J.*, at February Term, 1917, of ROCKINGHAM, upon these issues:

1. Did the defendant publish of and concerning the plaintiff in a letter to A. L. Brooks, Esq., the words set out in the plaintiff's second cause of action? Answer: Yes.

2. If so, did the defendant thereby charge the plaintiff with corruption or bribery in the discharge of his duties as a juror? Answer: Yes.

3. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $1,500.

From the judgment rendered, defendant appealed.

*W. R. Dalton, P. W. Glidewell, and W. M. Hendren for plaintiff.*
*A. W. Dunn, J. R. Joyce, and Manning & Kitchin for defendant.*

BROWN, J. 1. During the selection of the jury the defendant challenged Juror R. C. Comer on the ground of kinship to the plaintiff, the juror stating that he was fifth cousin to the plaintiff. The court held that a fifth cousin is not within the ninth degree, and held that his kinship was not cause for challenge. The defendant then challenged said juror peremptorily, and he thereafter exhausted his other three challenges before accepting the jury.

There is nothing in the record to indicate that there was any person on the jury against defendant's will. He had gotten rid of Comer and had exhausted his three remaining challenges before accepting the jury. He attempted to make no further challenge before accepting the jury, and that must be taken to indicate his satisfaction with the panel. The defendant should have challenged a fifth juror before accepting the jury, to indicate his dissatisfaction, and then except to the refusal to allow the peremptory challenge, upon the ground that they were not legally exhausted. The exact point was presented and decided in *Oliphant v. R. R.*, 171 N. C., 304, citing *S. v. Cockman,* 60 N. C., 485.

2. After verdict, and before judgment signed, the defendant moved to set aside the verdict because one of the jurors was related to plaintiff within the ninth degree. Upon perusal of the panel, defendant questioned Juror Roberts and asked about his relationship to plaintiff. The juror stated that he was not related within the ninth degree. Defendant passed the juror. The juror was third cousin to plaintiff, well within the ninth degree.

The court finds that in stating the relationship the juror made such statement in good faith, without any intention of speaking inaccurately or misleading the court or the defendant. The court finds that the defendant did not challenge the juror or inquire for other cause, and that he had a peremptory challenge unused, but accepted the juror, and

that after accepting the juror, Roberts, defendant's counsel then challenged another juror and stood him aside, exhausting his fourth peremptory challenge. There was no effort on the part of the defendant to exercise the rights of peremptory challenge, other than the fourth above set out, three of which had been exhausted before the juror, Roberts, had been questioned, and one was exhausted after.

The refusal of his Honor to set aside the verdict and grant a new trial is a matter within the sound discretion of the court, and is not reviewable. *S. v. Jones,* 80 N. C., 415; *S. v. Lambert,* 93 N. C., 618; *Baxter v. Wilson,* 95 N. C., 143; *S. v. Maultsby,* 130 N. C., 665.

In *S. v. Davis,* 80 N. C., 415, the Court said: "We think the principles deducible from all the authorities above cited are that where the challenge is to the poll, made for good cause, in apt time—that is, before the juror is sworn—it is strictly and technically a ground for a *venire de novo;* if made after the juror is sworn, the court may, in its discretion allow the challenge; but its refusal to do so is no ground for a *venire de novo,* because the prisoner has lost his legal right by not making his objection at the proper time; and the same principle applies if the objection existed at the time the juror was sworn, but not discovered until afterwards; in that case the refusal by the court to grant a *venire de novo,* or new trial, which in effect are the same, would not be error, and the only redress then left the prisoner is an appeal to the sound discretion of the court, before whom the case was tried, for a new trial, and, if refused, he has no right of appeal."

3. The defendant offered no evidence and moved to nonsuit. The evidence tends to prove that an action was tried in the Superior Court of Rockingham County entitled "Leaksville-Spray Institute v. B. Frank Mebane," in which defendant was interested personally as a trustee of the institute. The jury being unable to agree upon a verdict, a mistrial was ordered. The jurors, it appears, stood eleven for defendant Mebane and one for plaintiff institute. This plaintiff was one of the eleven. There is evidence tending to prove that this defendant stated publicly that there was one man on the jury that was not bribed. It is contended that these words naturally imply that the other eleven who were against the institute were bribed. Shortly after that, defendant had some correspondence by letter with Mr. A. L. Brooks, of Greensboro, who was attorney for Mebane in said action, in which defendant wrote and mailed the following letter, which was duly received and read by Mr. Brooks, viz.:

LEAKSVILLE, N. C., 3 July, 1913.

MR. AUBREY L. BROOKS.

DEAR SIR:—The Lord whom I serve requires me to hold no malice or hatred against any one, but He does not require me to look upon sin as

being right.  As I see it, a man who can be hired to slander and mis-represent another, and thus try to rob him of his good name is infinitely worse than a man who can be hired to rob a man of his purse.  (*I note what you say about the jury standing eleven to one; this was due entirely to whiskey and the appeal made to their prejudice.*)  I have been told by people who ought to know, that they did not try the case at all; they simply tried me, and all this slander was premeditated and deliberate. I was told before the trial commenced that this policy had been agreed upon.  All the money you get for it will never ease your conscience.

Yours truly,      D. F. KING.

The words in parentheses are those set out in the complaint as con-stituting the libel.  The defendant admits writing and mailing the letter, but avers that he did not refer to plaintiff or have him particularly in mind.

It has long been settled that it is actionable to publish words, oral or written, which tend to impeach the honesty and integrity of a public official in the execution of the duties of his office.

As long ago as 1724, in *Aston v. Blagrave,* 2 Lord Raymond, 1369; 92 Eng. Ref., 391, it was held actionable, *per se,* to say a justice of the peace is a rascal or liar, when speaking of his executing his office.

So it is held in the United States that words imputing to a justice of the peace *misconduct* touching him in his office are actionable.  *Mix v. Woodward,* 12 Conn., 262; *Gove v. Blethen,* 21 Minn., 80.

Likewise it is held that words, oral or written, tending to impeach the integrity and conduct of jurors in the discharge of their duty are action-able, *per se.*  25 Cyc., 352.

In *Byers v. Martin,* 2 Colorado, 605, it is held that a newspaper article denouncing a verdict to be "infamous," and saying "We cannot express the contempt which should be felt for these twelve men who have thus not only offended public opinion, but have done injustice to their own oaths," is libelous and actionable, *per se.*  In that case it was contended that the words complained of were not actionable, because they were published of and concerning a body or class of men, and therefore no cause of action lies as to an individual member of such body.  The court held that any member of the jury could maintain an action against the publisher, citing several precedents.

Thus we see from the authorities that this action may be maintained by plaintiff, although in the letter there is no specific reference to him, individually.

The defendant excepts because the court declined to let the defendant prove by the plaintiff on cross-examination that the plaintiff knew that the answer disavowed any reference to plaintiff contending that this is in mitigation of damages.  We fail to see the force of this.  The

fact that plaintiff knew what was in the answer and that it contained.a disavowal of any personal reference to him in the Brooks letter, does not mitigate the damage. It was as harmful to libel and slander the plaintiff collectively as one of the eleven jurors as it would have been to have libeled him individually.

There are many exceptions to the evidence and charge, which we have examined, but will not discuss, as it is unnecessary. In our view, if the evidence is to be believed, plaintiff has established a cause of action and is entitled to some damage.

The defendant did not offer himself as a witness or introduce any evidence. Such matters in mitigation of damage, as by means of a very dexterous cross-examination his counsel managed to bring out, he received full benefit of in the charge of the court.

No error.